762 So.2d 537 (2000)
Dwight BOUEY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1946.
District Court of Appeal of Florida, Fifth District.
June 2, 2000.
*538 J. Edwin Mills, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
The appellant appeals his convictions for trafficking in cocaine in an amount greater than 28 grams but less than 200 grams and for possession of cocaine with intent to sell. He argues that his convictions should be reversed because the alternate juror was allowed to retire to the jury room with the six principal jurors and that the trial court erred in sentencing him to ten years' incarceration as an habitual felony offender for the offense of trafficking. We reverse the appellant's sentence and remand for resentencing.
With regard to the alternate juror issue, the facts gleaned from the record are undisputed. However, it is what we cannot determine from the record that is most troublesome and leads us to conclude that this case must be remanded for further proceedings to determine exactly what happened when the trial court failed to properly discharge the alternate juror when the jury retired for deliberations.
The record shows that after the evidence portion of the trial concluded, the trial judge read the instructions to the jury, instructed the jurors to retire to the jury room to commence their deliberations, and advised them that the evidence would be sent back to them in a few minutes. Importantly, the trial judge did not discharge the alternate juror at that time.
Immediately after the jury retired to the deliberation room, apparently accompanied by the alternate juror, the trial judge and the attorneys discussed the routine matters of objections, additions or corrections to the jury instructions. The judge next inquired of the defendant whether he was satisfied with the services of his attorney and then turned his attention to discussions with the attorneys concerning what items of evidence should be sent back to the jury room. Toward the end of this discussion, the trial judge discharged the alternate juror. The prosecutor then advised the judge that he had been made aware that the alternate juror accompanied *539 the six primary jurors to the deliberation room. Both attorneys then requested an opportunity to establish a record of what happened with regard to the alternate juror. However, the court summarily denied those requests. The defense attorney immediately moved for a mistrial and that motion was also summarily denied. While the jury deliberated, the trial judge proceeded to call other cases on his docket that were scheduled for that morning.[1]
This is all of the information contained in the record regarding this issue. As a consequence, we do not know whether the alternate juror actually went into the deliberation room and, if she did, how long she remained there with the other jurors. Most importantly, we do not know whether the deliberations began in her presence. If they did, a new trial is mandatory.
Our system of justice is founded on the fundamental principle that disputes should be decided by a jury composed of citizens selected from the community where the dispute arises. The duty of the jurors is to resolve the contested issues fairly and impartially after thorough consideration of all of the evidence presented to them during the course of a trial. This can only be accomplished if they are provided a place of solitude and quiet, secured by the watchful eye of the trial judge.
It is equally important that the deliberations of the jury be kept free from any influence from strangers to the proceedings who may inappropriately influence the jury or impart information to them that was not filtered through the rules of evidence under judicial supervision during the trial process. It is the concern that the alternate juror might unduly influence the outcome of the verdict that has prompted the courts to be so insistent that the alternate juror not be allowed in the presence of the primary jurors while they deliberate. See Fischer v. State, 429 So.2d 1309 (Fla. 1st DCA 1983); see also Berry v. State, 298 So.2d 491 (Fla. 4th DCA 1974).
Florida Rule of Criminal Procedure 3.280(a) specifically provides in pertinent part that "an alternate juror who does not replace a principal juror shall be discharged at the same time the jury retires to consider its verdict." This rule is mandatory, not permissive, and it requires discharge of the alternate juror when the principal jurors retire to deliberate. See Berry; see also Lamadrid v. State, 437 So.2d 208 (Fla. 3d DCA 1983). Thus, the alternate juror is considered a "stranger" to the deliberations. Id.
The courts of this state have so carefully and zealously guarded against any intrusions into the deliberations of the jury that the presence of any stranger, including an alternate juror, during deliberations constitutes fundamental error.[2]See Ludaway v. State, 632 So.2d 732 (Fla. *540 1st DCA 1994); Sloan v. State, 438 So.2d 888 (Fla. 2d DCA 1983); Lamadrid; Berry; see also Dilorenzo v. State, 711 So.2d 1362 (Fla. 4th DCA 1998).[3] This rule applies equally to both civil and criminal cases. See Eickmeyer v. Dunkin Donuts of America, Inc., 507 So.2d 1193, 1194 (Fla. 3d DCA 1987) ("In a broader sense, the same concerns of the sanctity and secrecy of the jury room apply with as much force to civil as to criminal trials and as much implicate the rights of civil as of criminal litigants.").
Our analysis of these cases reveals that the primary concern of the courts was that the alternate juror was present while the jury actually deliberated on their verdict. See Eickmeyer (alternate juror actually participated in the deliberations); Lamadrid (alternate juror was present in jury room during deliberations); Fischer (alternate juror was inadvertently allowed to sit through the entire jury deliberations and actually voted with the others); Berry (trial court allowed alternate juror to be present during the entire period of deliberations with the admonition that she not participate in the deliberations). We agree that when the alternate juror is present during any part of the deliberations, either a mistrial or a new trial must be ordered.
However, we are also of the opinion that a distinction should be made between instances where the alternate juror was present while the jury actually deliberated on its verdict and instances where the alternate juror was present only during the limited organizational activity that the jurors typically engage in before actual deliberations begin. In Jacksonville Racing Association, Inc. v. Harrison, 530 So.2d 1001 (Fla. 1st DCA 1988),[4] the court recognized the importance of this distinction and held that the harmless error doctrine applies to cases where the alternate juror was present only during the organizational activity of the jury, provided the case was not discussed. The court indicated that the organizational activity prior to the commencement of deliberations would include the election of the foreperson and the decision whether to begin deliberations.
We agree with the decision in Jacksonville Racing and hold that if the alternate is present at any time after the deliberations commence, which is the time the jurors begin discussion of the case, then the error is fundamental and mistrial or a new trial is necessary. However, a harmless error analysis is appropriate if the alternate juror is present only during the time the jury engages in organizational activity such as taking breaks, making phone calls, or electing the foreperson and the case is not discussed in his or her *541 presence. Since we do not have sufficient information as to what actually happened in this case, we must remand it to the trial court so that a factual determination may be made on the record of how long the alternate juror was with the other jurors and what was discussed in her presence.
The other issue the appellant raises concerns his sentence as an habitual felony offender for trafficking in cocaine. He is correct that the trial court erred in sentencing him as an habitual offender for violation of section 893.135(1)(b)1.a., Florida Statutes (1999). This statute provides in pertinent part that if the quantity of cocaine "is 28 grams or more, but less than 200 grams, such person shall be sentenced pursuant to the Criminal Punishment Code and pay a fine of $50,000." Imposition of the habitual offender sentence on the defendant for violation of this statute was error because the statute specifically requires a sentence pursuant to the Criminal Punishment Code. See Wright v. State, 743 So.2d 103 (Fla. 1st DCA 1999); Rainey v. State, 741 So.2d 1207 (Fla. 1st DCA 1999). Under State v. Mancino, 714 So.2d 429, 433 (Fla.1998), this is an illegal sentence that "patently fails to comport with statutory or constitutional limitations." Therefore, the sentence imposed on the defendant in this case constitutes fundamental error which may be raised for the first time on appeal. See Maddox v. State, 760 So.2d 89 (Fla.2000) (approving Nelson v. State, 719 So.2d 1230 (Fla. 1st DCA 1998)); Rainey; Baker v. State, 724 So.2d 121 (Fla. 1st DCA 1998); Stanford v. State, 706 So.2d 900 (Fla. 1st DCA 1998).
We disagree with the State's argument that the sentence is not illegal because the actual term of incarceration does not exceed the statutory maximum and, therefore, does not exceed the maximum sentence that could be imposed pursuant to the Criminal Punishment Code. It is the designation of the defendant as an habitual offender that makes the sentence illegal. See Rainey; Nelson. Thus, the fact that the term of incarceration falls within the limits established by the Criminal Punishment Code does not transform this sentence into a legal one. See id.
Accordingly, the appellant's habitual offender sentence for the offense of trafficking is reversed. In the event the trial court finds that a new trial is not required based on the alternate juror issue, appellant is to be resentenced pursuant to the Criminal Punishment Code on the trafficking count.
REVERSED in part and REMANDED for proceedings consistent with this opinion.
PETERSON and PLEUS, JJ., concur.
NOTES
[1] The entire conversation that the judge, the prosecutor, Mr. Greene, and the defense attorney, Mr. Nesmith, had concerning this matter was as follows:

Mr. Greene: Your honor, I'm not sure if you're aware of this, I was just told she had already gone back there. I just want to put something on the record from her.
Mr. Nesmith: I move for a mistrial, Judge.
The Court: All right. Thank you very much. Motion Denied.
Mr. Nesmith: It's in regard to the unauthorized juror being in the back.
(Other cases called from morning session.)
[2] This case is distinguishable from Sloan v. State, 438 So.2d 888 (Fla. 2d DCA 1983), wherein the trial judge, upon discovering that the alternate juror had been in the jury room for approximately one hour of deliberations, asked the defense attorney if he objected. After conferring with the defendant, he specifically waived objection and did not move for a mistrial. The court held that under these circumstances, even though the defendant was entitled to a mistrial if he had asked for one, he waived the error. The court reasoned that it would be unfair to permit the defendant to choose to continue the deliberations without objection in the hopes of a favorable verdict and subsequently be entitled to a new trial if the verdict was not to his liking.
[3] In Dilorenzo, the court held that allowing a court employed Spanish interpreter to accompany a Spanish speaking juror into the jury room during deliberations constitutes fundamental error and requires a new trial. We cite that case only to illustrate how zealously the courts guard the sanctity of the jury room. Therefore, we express no opinion on whether we agree or disagree with that decision.
[4] In that case, the court read the jury instructions to the jury and asked them to retire, select a foreperson, and then decide whether they wanted to deliberate that night or start the next day. The alternate juror was not discharged at that time and retired with the six primary jurors, elected the foreperson and decided to start deliberations that night. They returned to the courtroom and informed the judge of their decision. The judge then instructed the jury to return to the jury room and begin their deliberations, but the foreperson advised the judge that the jurors needed to make phone calls first. The judge asked the jury to step out of the courtroom for a minute so he could discuss a matter with the attorneys, and he called them back after a minute or two. It was at this time that he discharged the alternate and the six jurors retired to the jury room.

The appellant contended that a new trial was warranted because of the alternate juror's presence in the jury room after the jurors went back to the jury room at the conclusion of the jury instruction charge. In resolving this issue, the court framed the issue by stating "the question here is whether the alternate was present during jury deliberations." 530 So.2d at 1004.